UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RAYMOND A. DELGADO,

           Plaintiff,

vs.                          Case No. 3:13-cv-624-J-39JBT

DAVID B. SHOAR, etc.; et al.,

           Defendants.

_____

**<u>ORDER</u>**

**I.  Status**

On May 30, 2013, Plaintiff Raymond A. Delgado instituted this action by filing a civil rights Complaint (Complaint) (Doc. 1) pursuant to 42 U.S.C. § 1983.[1]  He is proceeding on an Amended Complaint (Amended Complaint) (Doc. 28).  This cause is before the Court on Defendant, Armor Correctional Health Services, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint (Armor's Motion to Dismiss) (Doc. 34) and Defendant, Dr. Zehra Cumber's Motion to Dismiss Plaintiff's Amended Complaint (Dr. Cumber's Motion to Dismiss) (Doc. 35).  Plaintiff has responded.  <u>See</u> Plaintiff's Consolidated Response to Defendants Armor Correctional Health's and Cumber's Motions to Dismiss (Doc. 36).

_____

[1] Plaintiff is represented by counsel.

Defendants assert that Plaintiff has not exhausted his administrative remedies and has failed to state a claim upon which relief can be granted.   The matter is ripe for review.

## II.  The Amended Complaint

In the Amended Complaint, Plaintiff names as Defendants David B. Shoar, in his official capacity as Sheriff of St. Johns County, Florida; Armor Correctional Health Services, Inc. (Armor); Dr. Zehra Cumber, D.O. (Dr. Cumber), individually; and several unknown jail medical staff, individually.   There are four counts raised: (1) Count One - 42 U.S.C. § 1983: deliberate indifference (Defendant Dr. Cumber); (2) Count Two - 42 U.S.C. § 1983: deliberate indifference (Defendants Several Unknown Jail Medical Staff); (3) Count Three - 42 U.S.C. § 1983: municipal liability (Defendant Shoar); and (4) Count Four - deliberate indifference (Defendant Armor).   Amended Complaint at 8-13.

In the Amended Complaint, Plaintiff alleges the following.   He was arrested on September 3, 2010, and confined as a pretrial detainee at the St. Johns County Jail (Jail) from that date until he was transferred to state prison on April 17, 2012, after sentence was imposed on April 13, 2012.   He has a family history of colon cancer.   Plaintiff had symptoms and pain while confined in the Jail.   As of September 10, 2010, the medical staff was aware that Plaintiff's father had died of colon cancer.   On September 11, 2010, Plaintiff informed the medical staff in writing that he

noticed red/blood-like patchy areas in his stool.  Plaintiff is over fifty years of age and has a family history of colon cancer. Plaintiff received no treatment for symptoms for almost two months. Plaintiff notified the medical staff in writing on November 4, 2010 that he continued to have thinner stools and was still experiencing abdominal tenderness.  Plaintiff notified the medical staff that he had lost forty-five pounds since being confined in the Jail.

On November 6, 2010, a nurse saw Plaintiff for abdominal pain. The nurse noted Plaintiff was experiencing abdominal pain, constipation, weight loss, and tenderness to palpation of his abdomen.  She further noted that Plaintiff had rebound tenderness. On November 11, 2010, a nurse saw Plaintiff for back pain and leg weakness.  The nurse noted cancer as a current medical problem.

On November 12, 2010, Plaintiff saw Dr. Cumber.  Dr. Cumber noted Plaintiff's abdominal pain and tenderness and found Plaintiff to be guaiac positive (blood in his stool).  Dr. Cumber prescribed Metamucil (an over-the-counter fiber supplement).

On November 27, 2010, Plaintiff informed the medical staff that he was continuing to have abdominal discomfort.  A nurse saw Plaintiff on November 29, 2010, and by this time, Plaintiff had lost sixty pounds since his confinement in Jail.  The nurse noted Plaintiff experienced abdominal pain, constipation, and weight loss for the past month.  She also found his abdomen to be tender to

palpation and he had bloody stools.  The nurse referred Plaintiff to Dr. Cumber.

Dr. Cumber saw Plaintiff on December 6, 2010.  Plaintiff complained about abdominal pain and having to strain during bowel movements.  Dr. Cumber recorded that Plaintiff's abdomen remained tender, and then diagnosed Plaintiff with diverticulosis [sic] and constipation.  Dr. Cumber prescribed a stool softener, Colace.

On December 18, 2010, Plaintiff notified medical staff in writing of his persistent abdominal pain.  Dr. Cumber saw Plaintiff on December 21, 2010.  Plaintiff informed the doctor that he continued to have abdominal pain and a green stool.  Dr. Cumber prescribed Bentyl, an anti-spasmodic and anti-gas medication used to treat irritable bowel syndrome.

A nurse practitioner saw Plaintiff on January 15, 2011. Plaintiff complained of continued abdominal pain and constipation. The nurse practitioner continued Plaintiff on Bentyl.  On March 25, 2011, Plaintiff notified the medical staff that he continued to have blood in his stool and it had been some time since he had seen a doctor regarding his problem.  Dr. Cumber saw Plaintiff on April 12, 2011.  Plaintiff reported razor sharp pain during bowel movements.  Dr. Cumber increased the Metamucil dosage and continued Colace and Bentyl.  After April 12, 2011, Plaintiff received refills of fiber supplements and stool softeners.  In August 2011, the anti-gas medication was discontinued.

No colon examination was conducted while Plaintiff was in the Jail. Plaintiff was never sent for a CT scan. In sum, no routine evaluation for colon cancer was conducted even though Plaintiff had significant weight loss, blood in his stool, abdominal pain, family history of the disease, and is a male over fifty. Plaintiff's symptoms persisted and worsened throughout his stay at the Jail.

After Plaintiff was transferred to the Florida Department of Corrections, he presented acute symptoms of distress caused by colon cancer. Plaintiff received treatment at Memorial Hospital in Jacksonville, Florida. At that point, doctors discovered colon cancer that had perforated his colon and spread to his liver. Plaintiff received immediate emergency surgery. Due to the long delay in proper examination, diagnosis and treatment, Plaintiff's projected five-year survival rate dropped from 74% to as low as 8%. Routine tests offered in late 2010 would have shown the presence of cancer, reducing Plaintiff's pain and suffering. Also, early diagnosis would have allowed for containment of the cancer to the wall of the colon, preventing the need for chemotherapy or a colostomy.

Plaintiff seeks compensatory and punitive damages against Dr. Cumber and the unknown Jail medical staff; he seeks compensatory damages against Defendants Shoar and Armor.

### III.  Exhaustion of Administrative Remedies

Defendants Armor and Dr. Cumber move to dismiss the action pursuant to 42 U.S.C. § 1997e(a).  Exhaustion of available administrative remedies is required before an action with respect to prison conditions by a prisoner may be initiated in this Court. In addressing this threshold issue, the Eleventh Circuit provides:

> Before considering the merits of this case, we must address a threshold matter. According to 42 U.S.C. § 1997e(a), enacted as part of the Prison Litigation Reform Act (the "PLRA"),
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.
>
> The PLRA's effective date was April 26, 1996; because the prisoners filed their complaint after this date, the PLRA applies. Higginbottom v. Carter, 223 F.3d 1259, 1260 (11th Cir. 2000).  A district court must dismiss the suit when it finds that the plaintiff-inmate has not exhausted his administrative remedies.  Cf. Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000). . . .

Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2004).

Defendants Armor and Dr. Cumber contend that Plaintiff has not exhausted his administrative remedies.  Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the Prison Litigation Reform Act.  Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir.), cert.

6

denied, 555 U.S. 1074 (2008); <u>Jones v. Bock</u>, 549 U.S. 199, 211
(2007); <u>Woodford v. Ngo</u>, 548 U.S. 81, 85 (2006) ("Exhaustion is no
longer left to the discretion of the district court, but is
mandatory.") (citation omitted).  The Supreme Court has stated that
"failure to exhaust is an affirmative defense under the PLRA[.]"
<u>Jones v. Bock</u>, 549 U.S. at 216.  However, "the PLRA exhaustion
requirement is not jurisdictional[.]"  <u>Woodford v. Ngo</u>, 548 U.S. at
101.  <u>See</u> <u>Turner v. Burnside</u>, 541 F.3d 1077, 1082 (11th Cir. 2008)
(recognizing that the defense "is not a jurisdictional matter").

The Eleventh Circuit, in discussing an unenumerated motion to
dismiss under 12(b), Fed.R.Civ.P., based on failure to exhaust
administrative remedies, notes:

> That motions to dismiss for failure to
> exhaust are not expressly mentioned in Rule
> 12(b) is not unusual or problematic.
> "'Federal courts . . . traditionally have
> entertained certain pre-answer motions that
> are not expressly provided for by the rules.'"
> <u>Ritza</u>, 837 F.2d at 369 (quoting 5C Wright &
> Miller, <i>supra</i>, § 1360 at 77).  For instance,
> courts may decide motions to dismiss that are
> "'closely related to the management of the
> lawsuit and might generally be characterized
> as involving matters of judicial
> administration.'"  <u>Id.</u>; <u>see</u> <u>e.g.,</u> <u>Int'l Ass'n
> of Entrepreneurs of Am. v. Angoff</u>, 58 F.3d
> 1266, 1271 (8th Cir. 1995) ("While pre-answer
> motions are ostensibly enumerated in
> Fed.R.Civ.P. 12(b), district courts have the
> discretion to recognize additional pre-answer
> motions, including motions to stay cases
> within federal jurisdiction when a parallel
> state action is pending.").

Bryant v. Rich, 530 F.3d at 1375 (emphasis added).  The Eleventh
Circuit concludes that "exhaustion should be decided on a Rule
12(b) motion to dismiss[.]"  Id. (citation omitted).

If a prisoner fails to completely exhaust his administrative
remedies prior to initiating a suit in federal court, the complaint
must be dismissed.  "This is true even if the inmate thereafter
exhausts his administrative remedies after initiating his action in
federal court."  Whitley v. Aldridge, No. 3:11-cv-491-J-25JBT, 2013
WL 4520883, at *2 (M.D. Fla. Jan. 15, 2013) (citations omitted).
Moreover, "the PLRA exhaustion requirement requires proper
exhaustion."  Woodford, 548 U.S at 93.

> Because exhaustion requirements are designed
> to deal with parties who do not want to
> exhaust, administrative law creates an
> incentive for these parties to do what they
> would otherwise prefer not to do, namely, to
> give the agency a fair and full opportunity to
> adjudicate their claims.  Administrative law
> does this by requiring proper exhaustion of
> administrative remedies, which "means using
> all steps that the agency holds out, and doing
> so properly (so that the agency addresses the
> issues on the merits)."  Pozo,[2] 286 F.3d, at
> 1024. . . .

Id. at 90.  "Proper exhaustion demands compliance with an agency's
deadlines and other critical procedural rules."  Id.

Defendants assert that Plaintiff failed to meet his burden of
establishing that he has exhausted his administrative remedies in

---

[2] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir.), cert. denied,
537 U.S. 949 (2002).

his Amended Complaint.  Upon review of the relevant case law, a pretrial detainee is not required to plead or demonstrate exhaustion in his complaint:  "[w]e conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."  Jones v. Bock, 549 U.S. at 216.

To exhaust administrative remedies, an inmate is required to use all steps that the agency holds out; however, Defendants have not provided the Court with any information regarding the administrative steps the agency held out to Plaintiff during his confinement in the Jail.  Initially, the Court notes that Defendants fail to identify the administrative process that was available to Plaintiff at the Jail during the period from September 3, 2010 through April 17, 2012.  Also, Defendants have not submitted any documentation or any citations to any relevant rules and procedures of the Jail.  Plaintiff does not concede that he failed to exhaust his administrative remedies prior to filing his case.  And, from the face of the Amended Complaint, it is not readily apparent that Plaintiff failed to exhaust administrative remedies available at the Jail.

Indeed, Plaintiff grieved and complained, often in writing, about his medical problems.  As noted by Plaintiff, "the Court and the Plaintiff have no evidence of what the purported administrative remedies would have been in this case, and the Defendants have

failed to provide the same." Response at 6. Thus, Dr. Cumber's and Armor's Motions to Dismiss are due to be denied with respect to the affirmative defense of failure to exhaust administrative remedies.

## IV.  Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

The Eleventh Circuit recently discussed the underlying requirements in presenting a claim of deliberate indifference to a serious medical need:

> Section 1983 provides a remedy for the deprivation of federal civil rights by a person acting under color of state law. See 42 U.S.C. § 1983. Prison officials violate the Eighth Amendment when they act with deliberate indifference to an inmate's serious medical

10

needs, giving rise to a cause of action under § 1983. Estelle v. Gamble, 429 U.S. 97, 104–05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Claims of deliberate indifference to the serious medical needs of pretrial detainees are governed by the Fourteenth Amendment rather than by the Eighth Amendment. Andujar v. Rodriguez, 486 F.3d 1199, 1203 n.3 (11th Cir. 2007). However, pretrial detainees are afforded the same protection as prisoners, and cases analyzing deliberate indifference claims of pretrial detainees and prisoners can be used interchangeably. See id. To prevail on a claim of deliberate indifference, a plaintiff must show: (1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between the defendant's indifference and the plaintiff's injury. Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306–07 (11th Cir. 2009).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotation marks omitted). Establishing deliberate indifference to that serious medical need requires the plaintiff to demonstrate: (1) subjective knowledge that serious harm is possible; (2) disregard of that risk; and (3) conduct that is more than mere negligence. Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004). Conduct that is more than mere negligence may include: (1) knowledge of a serious medical need and a failure or refusal to provide care; (2) delaying treatment; (3) grossly inadequate care; (4) a decision to take an easier but less efficacious course of treatment; or (5) medical care that is so cursory as to amount to no treatment at all. McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). A simple difference in medical opinion between the medical staff and an inmate as to the latter's diagnosis or course of treatment does not establish deliberate indifference. Harris v.

11

> <u>Thigpen</u>, 941 F.2d 1495, 1505 (11th Cir. 1991).
> "A § 1983 plaintiff may demonstrate causation
> either by establishing that the named
> defendant was personally involved in the acts
> that resulted in the constitutional
> deprivation, or by showing that the defendant
> instituted a custom or policy that resulted in
> deliberate indifference to constitutional
> rights." <u>Thomas v. Bryant</u>, 614 F.3d 1288, 1317
> n.29 (11th Cir. 2010) (alteration omitted)
> (citations omitted) (internal quotation marks
> omitted).

<u>Carter v. Broward Cnty. Sheriff's Dep't Med. Dep't</u>, 558 F. App'x
919, 921-22 (11th Cir. 2014) (per curiam).

Defendant Dr. Cumber asserts that Plaintiff has failed to
adequately allege a claim of deliberate indifference to a serious
medical need.  Instead, Dr. Cumber suggests, Plaintiff has simply
presented a "disagreement with the medical decisions as to the
proper course of medical treatment given to him."  Dr. Cumber's
Motion to Dismiss at 8.

Upon review of the Amended Complaint, Plaintiff has adequately
presented a Fourteenth Amendment claim, alleging the denial of
medical care for his serious medical needs in Count One of the
Amended Complaint.  Amended Complaint at 8-9.  Plaintiff claims Dr.
Cumber's actions and/or omissions were done with malice and/or
reckless indifference to Plaintiff's serious medical needs.  <u>Id</u>. at
8.

After <u>Farmer v. Brennan</u>, 511 U.S. 825, 1979 (1994) (holding
the official must know of and disregard an excessive risk to an
inmate's health or safety, the official must be aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists, and the official must draw that inference), a claim of deliberate indifference requires proof of more than gross negligence. Townsend v. Jefferson Cnty., 601 F.3d 1152, 1158 (11th Cir. 2010) (citing Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996)). Plaintiff's allegations amount to more than just a claim of gross negligence. See McElligott v. Foley, 182 F.3d 1248, 1256 (11th Cir. 1999) (record allows inference that the doctor and the nurse were aware of a substantial risk of harm to an inmate, and although the doctor did not diagnose the inmate's condition as cancer nor did he know that the inmate had cancer, the doctor and the nurse could be found to be "aware of the [inmate's] tremendous pain and illness[.]"). In McElligott, the Court found that a jury could find a doctor and a nurse deliberately indifferent to the inmate's need for further diagnosis of and treatment for severe pain. Id. at 1256-57. Also of import, failure to further diagnose and treat severe pain of a deteriorating condition satisfies the requirement of a serious medical need constitutionally requiring medical attention.

The Court concludes that Defendant Dr. Cumber's Motion to Dismiss should be denied. Plaintiff's claim against Dr. Cumber has facial plausibility and will not be dismissed for failure to state a claim under the Fourteenth Amendment.

13

The matters raised in Defendant Dr. Cumber's Motion to Dismiss would more properly be raised in a Rule 56 motion with supporting medical records, affidavits, and other relevant documents. Plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570.  When Defendant Dr. Cumber files a motion for summary judgment, Dr. Cumber is directed to state with particularity the supporting evidentiary basis for granting summary disposition of this case.  The Court need not scour the record for evidentiary materials on file; instead, the Court need ensure that the allegedly dispositive motion itself is supported by the appropriate evidentiary materials.  <u>Reese v. Herbert</u>, 527 F.3d 1253, 1269 (11th Cir. 2008) (citing <u>One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.</u>, 363 F.3d 1099, 1101-02 (11th Cir. 2004)).

In Armor's Motion to Dismiss, Armor contends that Count IV should be dismissed for Plaintiff's failure to sufficiently allege a policy of deliberate indifference to serious medical needs. Armor urges this Court to find that Plaintiff's Amended Complaint "is devoid of any factual allegations and consists entirely of conclusory assertions."  Armor's Motion to Dismiss at 6.

Plaintiff sets forth his allegations against Defendant Armor, claiming Defendant Armor "instituted and followed practices, customs, and policies which directly resulted in deliberate indifference to Mr. Delgado's serious medical needs."  Amended

14

Complaint at 12.   In support of this contention, Plaintiff references the following: (1) Armor was aware of a systemic and widespread practice of inadequate medical care despite the obvious need for medical care; (2) Armor failed to discipline its agents and employees for their actions/omissions; and (3) Armor ratified the medical decisions and the reasons for those decisions.  <u>Id</u>.  In the alternative, Plaintiff states that Dr. Cumber and the medical staff acted as final policymakers for Armor, Armor failed to adequately train these agents/employees despite an obvious and apparent need for such training, and Armor's actions/omissions resulted in the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment.  <u>Id</u>.

Armor is a private Florida corporation contracting with St. Johns County and/or the Sheriff's Office.  Amended Complaint at 2. Since St. Johns County contracted out its health care of inmates, the obligations of the Fourteenth Amendment attach.   It is undisputed that Armor is a person acting under color of state law. Thus, Armor may be liable under 42 U.S.C. § 1983 for a constitutional violation.  But, Plaintiff "must do more than assert <u>respondeat</u> <u>superior</u>[.]" <u>Howell v. Evans</u>, 922 F.2d 712, 724 (11th Cir. 1991), <u>opinion</u> <u>reinstated</u>, <u>Howell v. Burden</u>, 12 F.3d 190 (11th Cir. 1994).  Plaintiff must show causation, and in this instance, Plaintiff is alleging that a policy or custom of Armor led to the constitutional violation of deliberate indifference to a serious

medical need.   Significantly, if Dr. Cumber and/or the unnamed medical staff were the final authority on policy for Armor at the Jail, "then a causal link would exist sufficient for potential liability under section 1983."   <u>Id</u>.

The Court concludes that Defendant Armor's Motion to Dismiss should be denied.   Thus, Defendants Armor and Dr. Cumber will be directed to respond to the Amended Complaint.

Therefore, it is now

**ORDERED:**

1.   Defendant, Armor Correctional Health Services, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint (Doc. 34) and Defendant, Dr. Zehra Cumber's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 35) are **DENIED.**

2.   Defendants Armor and Dr. Cumber shall respond to the Amended Complaint by **December 1, 2014.**

3.   Defendants, Armor Correctional Health Services, Inc. and Dr. Zehra Cumber's Motion to Compel Answers to Interrogatories and Response to Request to Produce (Doc. 39) is **DENIED as moot.**   <u>See</u> Plaintiff's Response to Defendants Armor Correctional Health Services, Inc. and Dr. Zehra Cumber's Motion to Compel (Doc. 48), stating that Plaintiff has fully responded to the discovery requests at issue.   The request for attorney's fees, contained within the motion, is **DENIED.**   Plaintiff's counsel states that communication with his client has been difficult because Plaintiff

16

was moved from the St. Johns County Jail to the Lake Butler Reception and Medical Center, and then to the Northwest Florida Reception Center (in the panhandle of Florida), and finally, to the Northwest Florida Reception Center Annex (also in the panhandle). Counsel also states that the prison mail system is not efficient, hindering timely responses to discovery requests. Finally, counsel relates that staff turnover and the birth of his child occurred during the discovery period, necessitating rescheduling of Plaintiff's deposition and disruption of counsel's work routine. Under these circumstances, the Court is not inclined to grant attorney's fees as a sanction against Plaintiff's counsel.

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of October, 2014.

_____
BRIAN J. DAVIS
United States District Judge

sa 10/29
c:
Counsel of Record

17